UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CHRISTAIN TREVOR MIMS,
#847474,

        Plaintiff,

v.

UNKNOWN BENSON,

        Defendant.
_____/

Case No. 2:21-cv-250

Hon. Paul L. Maloney
U.S. District Judge

## REPORT AND RECOMMENDATION

### I.    Introduction

This Report and Recommendation (R&R) addresses Defendant's motion for summary judgment (ECF No. 22).

Plaintiff — state prisoner Christain Trevor Mims — filed suit pursuant to 42 U.S.C. § 1983 on December 27, 2021. In his unverified complaint, Mims alleged that while he was confined at the Chippewa Correctional Facility (URF) in Kincheloe, Michigan, Defendant Corrections Officer (CO) Unknown Benson violated Mims's Eighth Amendment rights by using excessive force against Mims. (ECF No. 1, PageID.3.) More specifically, Mims alleged that as he was exiting his cell for breakfast on February 14, 2021, CO Benson closed Mims's cell door on him. Then, despite Mims and other inmates informing Benson that Mims was stuck in his cell door, Benson did not open Mims's cell door until several minutes later. (*Id.*)

CO Benson now moves for summary judgment. (ECF No. 22.) Benson concedes that Mims got stuck in his cell door on the morning of February 14, 2021, but avers that Mims got stuck due to his own conduct. (ECF No. 23, PageID.83.) CO Benson says that Mims missed Benson's call for breakfast and was awoken by his cell door opening. (*Id.*, PageID.84.) Benson says that Mims then rushed to get dressed, and attempted to squeeze through his cell door as it was in the process of closing, at which point he became stuck. (*Id.*) Benson adds that he immediately opened Mims's cell door once he learned that Mims was stuck. (*Id.*, PageID.85.) Benson asserts that he is entitled to summary judgment because he did not intentionally utilize force against Mims. (*Id.*, PageID.86-87.) Furthermore, Benson argues that he is entitled to qualified immunity in his individual capacity and sovereign immunity in his official capacity. (*Id.*, PageID.88-89.) Mims did not respond.

The undersigned respectfully recommends that the Court grant CO Benson's motion for summary judgment (ECF No. 22) because there are no genuine issues of material fact with respect to the subjective component of Mims's Eighth Amendment claim; Mims has provided no evidence that CO Benson intentionally closed Mims in his cell door on the morning of February 14, 2021. Additionally, CO Benson is entitled to qualified and sovereign immunity. And even if CO Benson was not entitled to summary judgment, it appears that Mims has abandoned the prosecution of his claim.

## II. Factual Allegations

The statement of Mims's claim in his unverified complaint spans only one page. Mims says that on February 14, 2021, CO Benson was opening the cells in Mims's housing unit, one at a time, for breakfast. (ECF No. 1, PageID.3.) As Mims was exiting his cell behind his cellmate, Mims says that CO Benson began to close his cell door, causing Mims to become stuck in the door.

As soon as Mims became stuck, he says that he yelled out: "open my door, you[r'e] hurting me!" (*Id.*) Mims says that Benson did not open the door despite being a mere fifteen feet away and looking directly at Mims. When other inmates informed CO Benson that Mims was stuck in his door, Benson told the inmates to mind their own business. (*Id.*) Mims alleges that he was stuck in his cell door for four minutes. At one point, Mims says that CO Benson intentionally caused the cell door to smash Mims harder. (*Id.*)

Mims says that after he was released from the cell door, he went straight to medical services. There, he was told that he had abrasions from being stuck in the cell door. According to Mims, the four minutes that he was stuck in his cell door "felt like a lifetime of pain." (*Id.*)

## III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether

summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When, as here, the non-movant fails to respond to a motion for summary judgment, the Court must "examine the movant's motion for summary judgment to ensure that he has discharged his initial burden." *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998) (citing *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991)).

### IV. Analysis

Mims alleges that CO Benson violated his Eighth Amendment rights by closing Mims in his cell door, and then intentionally keeping Mims closed in his cell door. (ECF No. 1, PageID.3.) The Eighth Amendment limits the power of the states to punish those convicted of a crime. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton

4

infliction of pain." *Id.* at 346. Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.*

To establish an Eighth Amendment claim, Plaintiff must satisfy both an objective and subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991). "The subjective component focuses on the state of mind of the prison officials." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). "The objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson*, 501 U.S. at 298).

Under the subjective component, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 5-6 (1992). The Court "must judge the reasonableness of the force used from the perspective and with the knowledge of the defendant officer." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2474 (2015). In determining whether the use of force is malicious or sadistic, the Court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 6-7.

Under the objective component, the pain inflicted must be "sufficiently serious." *Williams*, 631 F.3d at 383 (quoting *Wilson*, 501 U.S. at 298). The Court's inquiry regarding the seriousness of the injury is "contextual" and is "responsive to contemporary standards of decency." *Hudson*, 503 U.S. at 8–9. While the extent of

5

an inmate's injury may help determine the amount of force used by the prison or jail official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). When prison or jail officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated, "[w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

Ultimately, Mims's claim fails because he failed to put forth any evidence that CO Benson intentionally utilized force against him by purposefully closing Mims in his cell door. Although Mims makes various allegations against Benson in his complaint, Mims's complaint was unverified; it does not have the force or effect of an affidavit. *See Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992) (explaining that *verified* complaints have the same force and effect as affidavits). As CO Benson points out, the only evidence that Mims has placed in the record is a verified statement from prisoner J. Harris. (ECF No. 1-1.) Harris states that he saw Mims get stuck in his cell door on February 14, 2021, and that when Harris and other prisoners told Benson that something was wrong, Benson told them to mind their business. (*Id.*, PageID.11.) These statements are plainly insufficient to establish that Benson intentionally closed Mims in his cell door, or intentionally kept Mims closed in his cell door.[1]

---

[1] The undersigned acknowledges that CO Benson attached a portion of Mims's deposition to his motion for summary judgment, and that the attached portion contains some questions and answers regarding whether Mims's cell door was closing when Mims began to exit, or whether it started closing after Mims began to exit. (ECF No. 23-2, PageID.98-99.) In one instance, Mims responded to a question by stating: "The door wasn't closing until — and this may just be my assumption, but I'm — I think I'm pretty accurate, is when he seen [sic] that I was coming out of the

Furthermore, CO Benson provided evidence that he did not intend to close Mims in his cell door, and that he released Mims from his cell door as soon as he realized that Mims was stuck. In an affidavit attached to his motion, CO Benson stated that from where he was standing and operating the cell doors on the morning of February 14, 2021, he could not see into any of the cells. (ECF No. 23-3, PageID.104.) And once he began releasing prisoners to breakfast, those prisoners blocked his view of the exterior of Mims's cell. (*Id.*, PageID.105.) According to Benson, he was not aware that Mims was stuck in his cell door until he was informed by other prisoners that someone was stuck in the door of cell 103 (Mims's cell). Even then, Benson was not aware that it was Mims who was stuck. (*Id.*) CO Benson said that he immediately opened the door, at which point Mims went back inside his cell. He then released the remainder of the prisoners in Mims's housing unit wing before re-opening Mims's cell door.

Benson also said that when Mims emerged from his cell, he did not appear to be injured. (*Id.*) That lack of injury is supported by the Nursing Note from Mims's February 14, 2021 visit to health services. (ECF No. 23-8, PageID.127 ("Left clavicle and left mid sternum no redness noted, no echymosis, no inflammation, no limited [range of motion].").) The Nursing Note further reflects that Mims reported "having pain midsternal from getting hit with segregation door while walking to chow; Inmate

---

cell because we was [sic] already having issues, so yeah." (*Id.*, PageID.99.) In the opinion of the undersigned, Mims's assumption that CO Benson began closing Mims's cell door after Mims began to exit the cell because they had preexisting issues is insufficient to create a genuine issue of material fact as to the subjective component of Mims's Eighth Amendment claim.

7

states the door was not open enough *and he was squeezing through.*" (*Id.*, PageID.126.) This note indicates that Mims attempted to exit his cell as the door was in the process of closing, not that CO Benson intentionally closed the cell door on Mims.

Ultimately, the undersigned finds that there are no genuine issues of material fact with respect to the subjective component of Mims's Eighth Amendment claim, and that the evidence on the record reflects that Mims was unintentionally shut in his cell door the morning of February 14, 2021. The undersigned therefore respectfully recommends that CO Benson is entitled to summary judgment.

## V.  Qualified and Sovereign Immunity

In addition to arguing that he did not violate Mims's rights under the Eighth Amendment, CO Benson asserts that he is entitled to qualified immunity in his individual capacity and sovereign immunity in his official capacity. (ECF No. 23, PageID.87-88.)

CO Benson's claim for qualified immunity is largely redundant. After initially arguing that he is entitled to judgment because he did not violate Mims's Eighth Amendment rights, he argues that he is entitled to qualified immunity because he did not violate Mims's Eighth Amendment rights.[2] In any event, the undersigned agrees; because there are no genuine issues of material fact and the undersigned finds that CO Benson did not violate Mims's Eighth Amendment rights, Benson is entitled

---

[2]  In other words, CO Benson does not argue that the rights at issue were not clearly established.

to qualified immunity. *See Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) ("Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982))).

CO Benson's claim for sovereign immunity is different. Benson argues that he is entitled to sovereign immunity in his official capacity as to Mims's claims for monetary damages regardless of the merits of Mims's claims.

A lawsuit against a state official for monetary damages is treated as a lawsuit against the State. *Brandon v. Holt*, 469 U.S. 464, 471 (1985). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Section 1983 did not expressly abrogate Eleventh Amendment immunity, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court, *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Mims sues Benson in his official an individual capacities for monetary damages. (ECF No. 1, PageID.2, 4.) As such, in the opinion of the undersigned, the Court should dismiss Mims's claim against Benson in his official capacity in accordance with Eleventh Amendment.

9

## VI. Failure to Prosecute

In addition to finding that Mims has failed to create a genuine issue of material fact as to his Eighth Amendment claim, the undersigned notes that Mims appears to have abandoned the prosecution of his case. CO Benson filed his motion for summary judgment on February 3, 2023. (ECF No. 22.) According to the Michigan Department of Corrections (MDOC) Offender Tracking Information System, Mims was discharged from MDOC custody on February 28, 2023. *MDOC Offender Tracking System*, https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=847474 (last visited Mar. 17, 2023). Mims did not file a response to CO Benson's motion for summary judgment prior to or after his discharge. Mims did not file a motion for extension of time to respond on the basis of his discharge. Nor did Mims so much as update the Court with his new address, as required by the Court's local rules. *See* W.D. Mich. LCivR 41.1 ("Failure of a plaintiff to keep the court apprised of a current address shall be grounds for dismissal for want of prosecution.").

The Court has authority to dismiss a case under Fed. R. Civ. P. 41(b) when a plaintiff fails to prosecute his case or to comply with rules, or a court order. It is well settled that the Court has inherent authority to dismiss *sua sponte* an action with prejudice for failure to prosecute. *Link v. Wabash R. Co.*, 370 U.S. 626, 629–30 (1962). As the United States Supreme Court explained:

> The authority of a federal trial court to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot seriously be doubted. The power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts. The power is of ancient origin, having its roots in judgments of nonsuit and non

> prosequitur entered at common law, e.g., 3 Blackstone, Commentaries (1768), 295—296, and dismissals for want of prosecution of bills in equity, e.g., id., at 451. It has been expressly recognized in Federal Rule of Civil Procedure 41(b), which provides, in pertinent part:
>
> > "(b) Involuntary Dismissal: Effect Thereof. For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him. * * *
> >
> > Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or for improper venue, operates as an adjudication upon the merits."
>
> Petitioner contends that the language of this Rule, by negative implication, prohibits involuntary dismissals for failure of the plaintiff to prosecute except upon motion by the defendant. In the present case there was no such motion.
>
> We do not read Rule 41(b) as implying any such restriction. Neither the permissive language of the Rule—which merely authorizes a motion by the defendant—nor its policy requires us to conclude that it was the purpose of the Rule to abrogate the power of courts, acting on their own initiative, to clear their calendars of cases that have remained dormant because of the inaction or dilatoriness of the parties seeking relief. The authority of a court to dismiss sua sponte for lack of prosecution has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.

*Id.* (footnotes omitted). Because it appears that Mims has abandoned the prosecution of his case, the undersigned alternatively recommends that the Court dismiss this case in accordance with Federal Rule 41(b) and Local Civil Rule 41.1.

## VII. Recommendation

The undersigned respectfully recommends that the Court grant CO Benson's motion for summary judgment (ECF No. 22) because there are no genuine issues of

11

material fact with respect to the subjective component of Mims's Eighth Amendment claim; Mims has provided no evidence that CO Benson intentionally closed Mims in his cell door on the morning of February 14, 2021. Furthermore, CO Benson is entitled to qualified and sovereign immunity. And even if CO Benson was not entitled to summary judgment, it appears that Mims has abandoned the prosecution of his case.

If the Court accepts this recommendation, this case will be dismissed.

Dated:  March 17, 2023 /s/ *Maarten Vermaat*
MAARTEN VERMAAT
U. S. MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C) Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).